

**NUMBER 13-22-00337-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**THOMAS P. BOND,**                                                                                  **Appellant.**

**v.**

**KNIFE RIVER
CORPORATION-SOUTH,**                                                              **Appellee.**

---

**ON APPEAL FROM THE 85TH DISTRICT COURT
OF BRAZOS COUNTY, TEXAS**

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña
Memorandum Opinion by Justice Tijerina**

Appellant Thomas P. Bond appeals a jury verdict in favor of appellee Knife River Corporation-South (KRCS) on Bond's breach of contract action. By three issues, Bond argues that: (1) KRCS failed to pay him a bonus that he earned; (2) the trial court "attempted to interject an employment term not contracted for . . . when it provided its own

[q]uestion [to the jury] and then misinterpreted the Jury's answer"; and (3) "upon a reversal of the [trial c]ourt's [j]udgment," an award of attorney's fees is warranted. We affirm.

## I. BACKGROUND[1]

KRCS is in the business of providing ready-mix cement. KRCS recruited Bond for employment, and Bond began working for KRCS in 2008. Bond received bonus payments for the years 2012 through 2016 for his work performance. In January 2017, Bond received a bonus in the amount of $10,159—the first installment of a bonus he earned in the year 2016. Bond resigned on April 3, 2017.[2] When KRCS did not pay him the second installment of his 2016 bonus in July 2017, Bond filed suit asserting breach of contract. A jury trial commenced on May 16, 2022.

### A. Tracy Radtke

Tracy Radtke, KRCS's Human Resource Director, explained that Bond signed an employment document, which was admitted into evidence, that read: "If employed, I understand that [KRCS] may unilaterally change or revise their benefits, policies, and procedures; and such changes may include reduction in benefits." The employment document further provided that Bond's "position will carry a bonus potential." Radtke clarified that Bond did not receive a bonus payment for the years 2008 through 2012; he received his first bonus in January 2013 for the preceding 2012 year.

Radtke testified that KRCS had discretion in the amount of an employee's bonus and how the bonus was calculated. Radtke explained that KRCS paid the bonuses that

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] It is undisputed Bond worked for KRCS's competitor immediately following his resignation.

2

were earned the previous year in January of the following year; however, "key employees" would collect their bonus and then "leave abruptly," which "was very damaging to the company." Therefore, senior management restructured the bonus plan "in order to retain or to incentivize employees to stick around till halfway through the year." A document titled "AIP Plan—South Region 2016 Plan Year," which was admitted into evidence, stated that bonuses would be paid in two parts, and an employee was required to be an active employee for any part of a bonus payment to be disbursed. Radtke testified that all employees "absolutely" would have been aware of the restructured AIP plan although Bond's signature does not appear on the document.

Bond's resignation letter, which stated his last day of work was April 3, 2017, was admitted into evidence. According to Radtke, in January 2017, Bond was paid one half of his bonus, which he earned for the year 2016, but he was not entitled to the second installment of the bonus because he was not employed with KRCS in July 2017. Radtke claimed that KRCS did not tender a second bonus payment to any person who had resigned and was no longer working for KRCS on the date of payment. Thus, according to Radtke, Bond was not treated any differently than others who had resigned after receiving the first bonus installment payment in January.

## B. Roy Lee Kirkpatrick

Roy Lee Kirkpatrick testified that he was the vice-president at KRCS.[3] He stated that in 2012, KRCS altered its current bonus plan because "several key employees" had

---

[3] Kirkpatrick also shared that he is married to Bond's first cousin, so he has known Bond for decades and personally recruited Bond to work for KRCS.

collected their bonus "early in the year and then depart." "[T]o maintain employment," KRCS disbursed half of an employee's bonus early in the year, "and then you'd stay till you got it mid-year and now you're halfway invested in a new year[,] so you'd stay." Previously, bonuses were paid in one lump sum, but KRCS changed the bonus plan to incentivize and encourage retention of employees. Kirkpatrick stated he never personally spoke to Bond about this change in the bonus plan.

## C. Herb Brown

Herb Brown, the general manager at KCRS and Bond's supervisor, explained that bonuses are not assured to employees and depend on numerous factors, including eligibility. He explained that the bonus was originally paid out in a lump sum, but, as previously stated, executives decided to split the payments into a two-part payment because several people left in January once they received their bonus: "You'd get half in January and half in June and the stipulation was you still had to be employed in January and in June to receive half of that—your half of the bonus."

According to Brown, he had at least two conversations with Bond about the bonuses; one conversation was in Brown's office and the other was in Bond's office. Brown stated that Bond believed he should receive his bonus in full in January, but Brown stated that changes were made by the president, and "[a]ll [he] could do was confer with [Bond], let him know that's the decision of the management of the region, and that's just the way it had to be." Brown testified that he informed Bond the reason "this was being done was for retention purposes" as people were collecting their bonuses in January and then leaving the company immediately after. Brown explained that "the change in plan

4

was sent out to all employees that were eligible under the bonus plan." Nonetheless, Brown reiterated that he had "no doubt" Bond was aware of the changes to the bonus plan because Brown discussed it with him personally on at least two occasions.

**D. Bond**

Bond testified that he received his first bonus in one lump sum in 2013 for his work performance in the preceding year. The following year, his bonus was separated into two payments; that is, he received one half in January 2014 and the second half in July 2014. Bond approached Brown to inquire about the change, but "what [he] got out of it from [Brown] is you got a bonus that—going to pay you the first, that you were going to get the second one because it was earned. Financially I don't know why they did it. I couldn't tell you." Bond received another bonus in 2015 in the same fashion: one installment in January and one in July. Bond stated that when he approached Brown, again, about the two bonus installments in 2015, Brown told him, "[I]t is what it is[,] and that's what it is." According to Bond, he never knew when he would receive a bonus, "it showed up—when we got it."

On cross-examination, Bond agreed that Brown was "reliable, honorable, and credible," and he had a "great relationship" with him. Bond admitted when he spoke to Brown about how the bonuses would be paid moving forward in 2015, Brown told him that "the payments were going to be split in two," that his "first installment" would be ready the following year in "January or February," and he "would be getting the second installment in June or July." Bond agreed that if he were still employed at KRCS in July 2017, he would have received the second installment of his 2016 bonus. He

5

acknowledged that there is not one person who worked for KRCS at the beginning of 2017—but resigned before July—who received the second installment bonus payment. Furthermore, Bond explained that his Texas Workforce Commission claim was denied and ultimately dismissed after an appeal.

Bond was provided with his deposition testimony dated September 27, 2018. In it, Bond stated that Brown told him the split payments were for "incentive" and "retention purposes," and Bond clarified that Brown, "said retention." Bond acknowledged that he did not ask Brown or KRCS for any written policy discussing bonus payments or the new change, and he did not raise any complaints to KRCS in writing.

Bond read item No. 13 in KRCS's AIP Plan, which states: "Half of the eligible payout will be paid by February 28, 2017," and the "remaining half will be paid by . . . July 1st, 2017. Participants must be currently employed on the date of payment to receive payments (retention incentive)." Bond clarified he was not aware of KRCS's AIP policy, and he had never seen such a document until he was deposed in 2018. If he would have been informed of the policy, he "would have stayed [employed] until . . . July 1st."

## E.    Verdict

Both parties submitted proposed jury charges, which the trial court denied. The trial court provided its own charge. Question one read:

> Did [] Bond and [KRCS] agree that Bond would be entitled to receive a bonus check from [KRCS] on the date that the second 2017 check was to be issued?
>
>        In deciding whether the parties breached an agreement, you need to consider what they said and did in light of the surrounding circumstances, including any earlier course of dealings. You may not consider the parties' unexpressed thoughts or intentions.

6

The jury answered no. The trial court entered judgment in favor of KRCS in accordance with the jury's verdict. This appeal followed.

## II.    LEGAL SUFFICIENCY

By his first issue, Bond argues that KRCS "failed to pay a bonus to [Bond] that had been earned but was wrongfully withheld." We construe this statement as challenging the sufficiency of the evidence to support the jury's verdict when it found that KRCS did not agree to pay Bond the second bonus installment in July 2017.

### A.    Standard of Review & Applicable Law

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it had the burden of proof, as here, that party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We view the evidence in the light most favorable to the finding, and we assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). We defer to the jury's determination as to the credibility of the witnesses and the weight to give their testimony, and we indulge every reasonable inference in support of the finding. *Id.* at 819, 822.

A plaintiff asserting a breach of contract claim must prove: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance as the contract required; (3) that the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) that the plaintiff sustained damages as a

7

result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 (Tex. 2018).

**B.    Analysis**

Here, Radtke testified that an employee was required to be an active employee for a bonus payment to be dispersed, all employees "absolutely" would have been aware of the restructured plan, and that bonuses were discretionary. She specified that Bond signed a document reciting: "If employed, I understand that [KRCS] may unilaterally change or revise their benefits, policies, and procedures; and such changes may include reduction in benefits." Additionally, Bond's employment document expressed that his position "carried bonus potential." Furthermore, Item No. 4 in the AIP stated: "If an employee is not employed at the date of payout(s), they are not eligible for pay out. Exception is employees retiring during the plan year at the discretion of Regional President." Kirkpatrick explained that KRCS changed the bonus plan to incentivize and encourage employees to retain employment with KRCS because previously employees would collect their bonus in one lump sum in January and then leave the company, which was detrimental to KRCS.

Bond testified that although he received his first bonus in one lump sum, starting in 2014 his bonuses were dispersed into two payouts: one in January and one in July. According to Bond, he inquired about the change on at least two occasions and Brown, told him, "[I]t is what it is[,] and that's what it is." In Bond's 2018 deposition, Bond testified that Brown explained the split payments were for "incentive" and "retention purposes"; then in 2016, Brown again explained the split payments were for "retention purposes."

Brown reiterated that he had "no doubt" Bond was aware of the changes to the bonus plan because he discussed it with Bond on at least two occasions. Brown testified that "one of the absolute conditions of the second payment" was "maintain[ing] your employment with the company." Although Bond complained to Brown that "he felt like he had earned it and he was due the money in January," Brown responded, "that's just the way the plan had been changed, there's nothing [Brown] can do to change it . . . to help him out." According to Brown, he explained to Bond, "[Y]ou know you're not going to get paid the second half of your bonus if you leave and[, Bond] was well aware of that."

On cross-examination, the following transpired:

[KRCS]:     Well, you knew that the bonuses were going to be paid out in January and July; right?

[Bond]:     Yes, sir.

[KRCS]:     And you knew that the payments were based upon retention; right?

[Bond]:     Yes, sir.

[KRCS]:     And you chose to leave in April even though you knew that the second payment wasn't going to be made until July; right?

[Bond]:     That's correct.

[KRCS]:     And even though you knew that that payment was based upon retention; right?

[Bond]:     Yes, sir.

In evaluating legal sufficiency, "we do not lightly reject the judgment of the jury." *W & T Offshore, Inc.*, 610 S.W.3d at 899. We conclude the jury heard sufficient evidence to support its rejection of Bond's claim that he was entitled by contract to his second bonus

9

installment in July 2017. The jury could certainly have credited the testimony of all the witnesses, including Bond himself, which indicated that no enforceable contract existed. *See Menchaca*, 545 S.W.3d at 502. Bond failed to conclusively establish the elements of breach of contract as a matter of law. *See Dow Chem Co.*, 46 S.W.3d at 241. Accordingly, we uphold the jury's verdict, and we overrule Bond's first issue.

### III. JURY QUESTION

By his second issue, Bond argues the trial court erred because it "attempted to interject an employment term not contracted for orally or in writing between [Bond] and [KRCS] when it provided its own [q]uestion and then misinterpreted the Jury's answer to [q]uestion No. 1." Bond does not: inform this Court how the trial court allegedly interjected an employment term; inform this Court what employment term the trial court allegedly inserted that was not contracted for by the parties; inform this Court how the trial court's charge was erroneous; provide this Court with the proper jury charge that should have been submitted; provide this Court with the standard of review for which to review his argument; or cite to legal authority that would arguably support his contention on appeal. *See* TEX. R. APP. P. 38.1(i) (providing that a brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Without citation to legal authority and without applying legal authority to the facts of this case, we find this issue inadequately briefed, and we decline to address it. *See id.* We overrule his second issue.

## IV.    ATTORNEY'S FEES

By his third issue, Bond states that if his "appeal is successful, the award of attorney's fees [is] not discretionary and must be awarded." Because Bond's appeal is not successful, we overrule his third issue.

## V.    CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Delivered and filed on the
27th day of June, 2024.

11